Margaret P. HILTON

v.

Vincent FRAIOLI, d/b/a Edgewood Associates.

No. 99–132 Appeal.

Supreme Court of Rhode Island.

Dec. 14, 2000.

600

Donald M. Gregory, II, North Kingstown, for Plaintiff.

Ralph J. Perrotta, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

In this employment contract action, the defendant, Vincent Fraioli, d/b/a Edge-

wood Associates (Fraioli), appeals from the entry of judgment in favor of the plaintiff, Margaret P. Hilton (Hilton), in the amount of $12,333, plus interest, and from the denial of his motion for a new trial. The case came before a single justice of this Court, who directed the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After reviewing the memoranda submitted by the parties and hearing the arguments of counsel, we are of the opinion that cause has not been shown, and we proceed to resolve the appeal at this time.

In 1994, Fraioli was a licensed real estate agent and broker operating a Century 21 real estate franchise agency in Edgewood, Rhode Island. In the latter part of that year, he decided to open a real estate agency in Wickford, Rhode Island. He approached Hilton and offered her employment with his proposed new agency as sales manager and administrator. At that time, Hilton had a secure, full-time position as an administrative assistant with another real estate agency in Wickford. She informed Fraioli that she would consider his offer, but that she would accept no less than a one-year term of employment. While Hilton considered Fraioli's employment offer, he suggested that she draft an employment compensation agreement and job description of her employment duties. After some negotiation, the parties signed a contract on January 9, 1995. As part of the job description, Hilton was to be responsible for recruiting real estate brokers for the agency. The compensation agreement provided for a base salary of $18,500 and delineated weekly gross and net payments. It also provided for bonuses, commission rates and "[p]aid vacation-based on 8.33 hours earned per month." The final provision in the compensation agreement specifically provided that:

> "This agreement is for one year from the time of signatures and to be reviewed and re-negotiated before the year end."

For approximately one month before Fraioli opened the Wickford agency, Hilton worked for Fraioli on a part-time basis from her home. In mid-March 1995, the agency officially opened for business. Hilton then began to work full-time at the office. Shortly thereafter, Fraioli expressed dissatisfaction with Hilton's job performance and with her failure to recruit more than one real estate agent. On May 9, 1995, Fraioli informed Hilton that he no longer could pay her salary because he was dissatisfied with her performance. Subsequently, on June 1, 1995, Hilton informed Fraioli that she was not willing to continue performing the duties of office manager, but she would continue her association with the agency as an associate broker. On June 7, 1995, Hilton terminated her association with the agency for economic reasons. Thereafter, she commenced this action against Fraioli for breach of contract.

After a nonjury trial, a Superior Court trial justice concluded that the plain language of the contract clearly and unambiguously provided that Fraioli had employed Hilton for one year. The trial justice found that although the agency had a slow start, she could not conclude that the slow start was as a result of Hilton's inefficiency or her failure to perform her contractual duties in a reasonable manner. The trial justice determined that when Hilton was terminated, she "was ready, willing and able to continue working as a Sales Manager for the stated price." She concluded that Fraioli had breached the contract and found that Hilton's damages resulting from that breach amounted to $12,333. The trial justice then entered judgment for that amount, plus interest, in favor of Hilton.

## Analysis

On appeal, Fraioli contends that the agreement provided only for Hilton's compensation, and asserts that the trial justice erred in relying on the contract's non-salary provisions to support her conclusion

that it guaranteed employment for one year. He next contends that the trial justice erred in considering Hilton's unilateral expectations, and that if, indeed, the agreement was ambiguous, it should have been construed against its drafter, Hilton. He then avers that even if the contract constituted a one-year guarantee of employment, Hilton's actions superseded that guarantee. Finally, he posits that the trial justice erred when she denied his motion for a new trial because he was justified in discharging Hilton for unsatisfactory performance and for reasons of economic necessity.

"It is well-established that 'the findings of fact of a trial justice, sitting without a jury, will be given great weight and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong.'" *Casco Indemnity Co. v. O'Connor*, 755 A.2d 779, 782 (R.I.2000) (per curiam) (quoting *Technology Investors v. Town of Westerly*, 689 A.2d 1060, 1062 (R.I.1997)). In our opinion, such error did not occur in this case.

"In this jurisdiction when the duration of a contract is uncertain, the contract is to be considered terminable at will." *Payne v. K–D Manufacturing Co.*, 520 A.2d 569, 573 (R.I.1987). "This principle applies even in situations in which the agreement of services provides that the employee shall receive a fixed sum for a stated period of service." *Id.* However, "[i]t has long been held that 'parties are bound by the plain terms of their contract.'" *Vincent Co. v. First National Supermarkets, Inc.*, 683 A.2d 361, 363 (R.I. 1996) (per curiam) "'Contract interpretation is a question of law; it is only when the contract terms are ambiguous that construction of terms becomes a question of fact.'" *Dubis v. East Greenwich Fire District*, 754 A.2d 98, 100 (R.I.2000) (per curiam). "We have consistently held that a contract is ambiguous only when it is reasonably and clearly susceptible of more than one interpretation." *Rotelli v. Catan-*

*zaro*, 686 A.2d 91, 94 (R.I.1996). "When a contract is unambiguous * * * the intent of the parties becomes irrelevant." *Vincent Co.*, 683 A.2d at 363.

In the present case, the trial justice found that the contract clearly provided for a one-year guarantee of employment. She based this finding primarily on the language providing that: "[t]his agreement is for one year from the time of signatures and to be reviewed and renegotiated before the year end." After reviewing the contract in its entirety, and according its language its plain, ordinary and usual meaning, we are of the opinion that the trial justice did not err in finding that the contract was clear, unambiguous, and open to only one reasonable interpretation. *See Rotelli*, 686 A.2d at 94.

Because the contract is unambiguous, we need not address Fraioli's contentions that the trial justice erred in considering Hilton's unilateral expectations or that the contract should have been construed against her as the drafter of the document.

Fraioli additionally asserts that even if Hilton's contract originally was intended as a one-year employment agreement, her actions superseded any employment guarantee that may have been contained in the contract. Specifically, he asserts that when Hilton agreed to delay the start of her employment and to work part-time, and when she later changed her status from manager to broker and then unilaterally terminated her employment, her actions transformed the agreement into an at-will employment contract. These assertions have no merit.

In her decision, the trial justice found such factors to be insignificant and as having no bearing on the issue at hand; namely, whether the contract provided for a one-year term of employment. Indeed, it was Fraioli's own actions that prompted the so-called superseding actions of Hilton. The record reveals that before the actual opening of the agency, Hilton worked part-time for half pay. It was only after it

officially opened for business in mid-March, 1995, that she began to work full-time for Fraioli in accordance with the contract. In view of the fact that she had no "office" to manage before mid-March, these actions by Hilton hardly can be viewed as superseding the contract.

■ Fraioli also contends that Hilton effectively amended the one-year employment guarantee when she changed her status from manager to broker and then terminated her relationship with Fraioli's agency. In essence, Fraioli contends that Hilton, by refusing to work without pay, abandoned the contract. This assertion is unpersuasive at best. The complained-of actions by Hilton occurred only after Fraioli breached the contract, informed Hilton that he no longer was prepared to pay her the contractual salary, and then did stop payment of her salary. Consequently, what Hilton did at Fraioli's agency after Fraioli had breached the contract was irrelevant.

■ Finally, Fraioli contends that the trial justice erred when she denied his motion for a new trial because he was justified in discharging Hilton for her unsatisfactory performance and for reasons of economic necessity.

The record reveals that the trial justice considered and rejected these arguments below. She found that although Fraioli's business encountered start-up difficulties, there was not enough evidence to conclude that Hilton was incompetent or that she failed to perform her contractual duties in a reasonable manner. In addition, the trial justice rejected Fraioli's contention that he was justified in terminating Hilton's employment contract for economic reasons. Noting that Fraioli's business survived its start-up problems and later thrived, she found that Hilton's termination was "a business decision to cut some fat" and that "[t]his business continued, and they just fired her."

■ Following a nonjury trial, "[t]he grounds for a motion for new trial are extremely limited, and such motion is appropriate only in instances in which either the trial court may find a manifest error of law on the face of the judgment previously entered or there is newly discovered evidence, not previously known or discoverable in the exercise of reasonable diligence, that is of sufficient importance to warrant a new trial of the action." *Finkelstein v. Finkelstein,* 502 A.2d 350, 356 (R.I.1985); *accord Tillson v. Feingold,* 490 A.2d 64, 66 (R.I.1985); *Town of Glocester v. Lucy Corp.,* 422 A.2d 918, 919 (R.I. 1980); *Gaglione v. Cardi,* 120 R.I. 534, 541, 388 A.2d 361, 365 (1978); *Colvin v. Goldenberg,* 108 R.I. 198, 208, 273 A.2d 663, 669 (1971). The trial justice, in denying Fraioli's motion for a new trial, found no manifest error of law in the judgment, and the record reveals that Fraioli failed to proffer any newly discovered evidence that was not available to him at the time of trial.[1] We have reviewed the record and find that the trial justice did not err when she denied the motion for a new trial.

For the foregoing reasons, Fraioli's appeal is denied and the judgment appealed from is affirmed. The papers in this case are remanded to the Superior Court.

---

1. Pursuant to the 1995 amendment to Rule 59 of the Superior Court Rules of Civil Procedure, in actions involving a trial by jury, the trial justice may grant a new trial for any of the reasons for which new trials have been heretofore granted and for error of law occurring at the trial. However, in actions tried without a jury, a trial justice may not grant a new trial for error of law occurring at the trial.