Andrew **PERRY** et al.

v.

William **GAREY** et al.

No. 2001–37–Appeal.

Supreme Court of Rhode Island.

June 12, 2002.

Charles F. Reilly, Providence, for Plaintiff.

Barbara Harris, Charles D. Wick, Providence, for Defendant.

Present WILLIAMS, C.J.,
LEDERBERG, BOURCIER,
FLANDERS, and GOLDBERG, JJ.

## OPINION

WILLIAMS, Chief Justice.

This breach of contract action came before us pursuant to the appeal of the defendants, William Garey (Garey), T.I.N. Metals Corporation (T.I.N. Metals), William Garey, d.b.a. Gold Bond Pharmaceutical Corporation, T.I.N. Metals Corporation, d.b.a. Gold Bond Pharmaceutical

Corporation, and Gold Bond Pharmaceutical Corporation (Gold Bond) (collectively referred to as defendants), after judgments for royalties were rendered in favor of the plaintiffs, Andrew Perry (Andrew), Lindelle Perry (Lindelle) and Lois Garey Perry (Lois) (collectively referred to as plaintiffs).[1] A Superior Court trial justice, sitting without a jury, determined that the defendants, jointly and severally, owed the plaintiffs royalties from the sale of the defendants' products based upon separate consulting and property settlement agreements between the parties. Because we conclude that the trial justice erred by finding that the payment of royalties continued beyond the life of the royalty agreement, we deny the appeal in part and sustain it in part. The facts pertinent to this appeal are as follows.

## I

### Facts and Travel

In 1987, Garey was president of Gold Bond, a Rhode Island corporation that manufactured and distributed various medicated powders.[2] Garey, was also the sole shareholder of T.I.N. Metals, the parent company of Gold Bond.[3] Andrew and Lindelle served as vice-president and office manager, respectively, for Gold Bond. Lois was Garey's wife.

In August 1987, Gold Bond sold the rights to three of its products, "Gold Bond Powder," "Keep It In Your Sneaker" powder and "Decub-U-Care" (collectively referred to as products), to Block Drug Corporation (Block). According to the terms of the sale, Block paid Gold Bond $1.3 million, in addition to a royalty of "four

---

1. *See* Appendix A for chart illustrating the agreements.

2. Before its corporate charter was revoked in 1993, Gold Bond was renamed GBX Corporation.

3. T.I.N. Metals owned all the shares of Gold Bond stock.

(4%) percent of all [n]et [s]ales of [p]rod-ucts * * * shipped and/or sold by [Block]" (Block-Gold Bond agreement or royalty agreement).

Also in August 1987, Andrew and Lin-delle entered into a separate consulting agreement (consulting agreement) with Gold Bond, whereby they agreed to "per-form such services as Gold Bond may rea-sonably request" in connection with the activities of Gold Bond. The consulting agreement expressly stated that it was a personal service agreement that would last "for the duration of time as specified" or as long as the Block-Gold Bond agreement was in effect. As consideration for the agreement for personal services, Gold Bond agreed to pay Andrew 42.5 percent and Lindelle 7.5 percent of any royalties it received from Block.

In September 1989, in connection with divorce proceedings, Garey and his wife, Lois, executed an "Amended Property Set-tlement Agreement" (property settlement agreement). The property settlement agreement acknowledged that Gold Bond had a contract to pay 50 percent of its royalties from the Block-Gold Bond agree-ment to third parties.[4] Consequently, the property settlement agreement stated that Lois was to receive 40 percent of the re-maining 50 percent of the royalties from the Block-Gold Bond agreement.

In March 1990, Andrew secured Martin Himmel Inc. (Himmel)[5] as a prospective buyer, to whom Block ultimately sold its rights in the products. Andrew then nego-tiated a new royalty agreement between Gold Bond and Himmel (Himmel–Gold Bond agreement). According to the terms of the new agreement, Himmel paid Gold Bond a $300,000 advance on future royalty payments and agreed to pay Gold Bond royalties of 2.5 percent of the net sales of the products in exchange for Gold Bond's termination of the Block-Gold Bond agree-ment, that provided for royalties of 4 per-cent of the net sales of the products. The Himmel–Gold Bond agreement made no reference to the consulting agreement be-tween Gold Bond, Andrew and Lindelle. Significantly, one-half of the $300,000 ad-vance went to Andrew and Lindelle.

Andrew and Lindelle, believing they were entitled to continuing royalties after the new Himmel–Gold Bond agreement took effect, filed a complaint in January 1997, requesting an accounting and judg-ment for any sums due to them. In March 2000, the complaint was amended to in-clude Lois. A jury-waived trial was sched-uled to begin on September 5, 2000.

Approximately four days before trial, defendants' counsel requested a continu-ance of the trial until the latter part of October 2000, purportedly because Garey's wife was seriously ill and because he wished to observe a religious holiday. A Superior Court magistrate stated that the case would be reached for trial as sched-uled unless Garey presented medical affi-davits by the trial date, confirming his wife's illness. On September 5, 2000, Gar-ey neither appeared at trial nor presented the requested medical affidavits. Instead, Garey's counsel again requested a continu-ance from the scheduling magistrate be-cause he "could not get an airplane flight" to Rhode Island from his home in Florida. The Superior Court magistrate denied the request for a continuance and assigned the case for trial on the same day.

---

**4.** Although not specified in the property set-tlement agreement, it seems clear that this refers to the contractual obligation of Gold Bond to Andrew and Lindelle, whose percent-ages of royalties together total 50 percent.

**5.** Himmel was not named as a party in this action.

During trial, Andrew testified that he received less than $50,000 from his consulting agreement with Gold Bond. Andrew testified that after Himmel bought the rights to the products from Block, he received $127,500 pursuant to the consulting agreement, representing 42.5 percent of the $300,000. Andrew further explained that he withheld $3,000 of this money for an accounting. Andrew testified that he had not received any other payments, despite the fact that Gold Bond received royalties totaling $614,847.02 from Himmel. Finally, Andrew testified that he discovered that although Gold Bond paid royalties on the $300,000 advance, the remaining $314,847.02 was transferred by Gold Bond to T.I.N. Metals, its parent corporation.

Lindelle testified that she had received $3,000 to $5,000 in royalties under the consulting agreement with Block. Lindelle said that she later received an additional $22,500, representing 7.5 percent of the $300,000 advance from Himmel. Like Andrew, however, Lindelle did not receive any other royalty payments from Gold Bond. Finally, Lois testified that she had received $30,000 in royalty payments in 1990 from the sale to Himmel. She also testified that she believed that she was entitled to receive royalty payments from 1990 to 1993, but denied receiving any additional money.

When the testimony ended, the trial justice concluded that each plaintiff was entitled to additional royalty payments. Holding all defendants jointly and severally liable,[6] he determined that Andrew was owed $133,809.98, Lindelle was owed $23,613.53 and Lois was owed $92,969.40. Applying interest of 12 percent per annum, in addition to costs, the trial justice entered judgment for Andrew totalling $253,733.05, Lindelle totalling $44,776.42 and for Lois, in the amount of $176,290.35.

The defendants filed a motion for a new trial pursuant to Rule 59(a) of the Superior Court Rules of Civil Procedure, asserting that Garey had been prejudiced by his inability to testify on his own behalf at trial. Additionally, defendants argued that an employment agreement between Andrew and Block constituted newly discovered evidence, warranting a new trial. Finding no manifest error in the judgment and determining that the employment agreement was available before trial, the trial justice denied the motion for a new trial. Judgment entered on December 15, 2000, and defendants filed a timely appeal.

## II

### Standard of Review

 It is well settled that "the findings of fact of a trial justice, sitting without a jury, will be given great weight and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *Bernier v. Lombardi,* 793 A.2d 201, 203 (R.I.2002) (quoting *Technology Investors v. Town of Westerly,* 689 A.2d 1060, 1062 (R.I.1997)). "Moreover * * * as a front-row spectator the trial justice has the chance to observe the witnesses as they testify and is therefore in a 'better position to weigh the evidence and to pass upon the credibility of the witnesses than is this [C]ourt.' " *Nisenzon v. Sadowski,* 689 A.2d 1037, 1042 (R.I.1997) (quoting *Lembo v. Lembo,* 677 A.2d 414, 417 (R.I. 1996)). "[I]f, on review, the record indicates that competent evidence supports the trial justice's findings, we shall not

**6.** The defendants also appeal the trial justice's finding of liability against T.I.N. Metals. However, because we conclude that the trial justice erred in construing the consulting agreement, we need not address this issue.

substitute our view of the evidence for his [or hers] even though a contrary conclusion could have been reached." *Id.* (quoting *Tim Hennigan Co. v. Anthony A. Nunes, Inc.,* 437 A.2d 1355, 1357 (R.I. 1981)). Questions of law, however, "are reviewed *de novo* by this Court." *Associated Builders & Contractors of Rhode Island, Inc. v. Department of Administration,* 787 A.2d 1179, 1184 (R.I.2002) (citing *DEPCO v. Bowen Court Associates,* 763 A.2d 1005, 1007 (R.I.2001)).

### III

### Consulting Agreement

█ The defendants first argue that the trial justice erred by ordering defendants to pay royalties to Andrew and Lindelle when the consulting agreement "did not contemplate services to any entity other than Block * * *." The defendants assert that the trial justice's ruling impermissibly rewrote the consulting agreement to contradict its plain meaning. We agree and conclude that Andrew and Lindelle were entitled to receive royalty payments only during the life of the Block-Gold Bond agreement and not the new agreement between Himmel and Gold Bond.

█ "Contract interpretation is a question of law * * *." *Hilton v. Fraioli,* 763 A.2d 599, 602 (R.I.2000) (quoting *Dubis v. East Greenwich Fire District,* 754 A.2d 98, 100 (R.I.2000)). It is well settled, moreover, that "[u]nless plain and unambiguous intent to the contrary is manifested, words used in contract language are assigned their ordinary meaning." *Dubis,* 754 A.2d at 100 (quoting *Cerilli v. Newport Offshore, Ltd.,* 612 A.2d 35, 37–38 (R.I. 1992)). "[A] contract is ambiguous only when it is reasonably and clearly susceptible of more than one interpretation." *Hilton,* 763 A.2d at 602 (quoting *Rotelli v. Catanzaro,* 686 A.2d 91, 94 (R.I.1996)).

A review of the consulting agreement and Himmel–Gold Bond agreement discloses, in unambiguous language, that Andrew and Lindelle were not entitled to royalties pursuant to the Himmel–Gold Bond agreement. The consulting agreement specifically stated that:

> "Gold Bond is looking to retain such people for the duration of time as specified in [the Block Gold Bond agreement] dated August 3, 1987, attached hereto and, included herein by reference and identified as Exhibit 'A.' * * * Andrew and Lindelle agree to perform such services as Gold Bond may reasonably request, commencing immediately, *ending when the aforementioned [Block-Gold Bond agreement] ends."* (Emphasis added.)

Moreover, the Himmel–Gold Bond agreement specifically stated that in consideration of the termination of the Block-Gold Bond agreement, "[Himmel] shall pay Gold Bond a royalty fee equal to two and one-half (2½%) percent of the [n]et [s]ales of the [p]roducts. * * * It is understood and agreed that upon execution of this letter agreement * * * the *[Block-Gold Bond agreement] shall be deemed terminated and of no further force and effect."* (Emphasis added.)

In the instant case, the trial justice erred in finding that Andrew and Lindelle were entitled to continuing royalty payments under the Himmel–Gold Bond agreement. The consulting agreement clearly refers to the Block-Gold Bond agreement, and expressly provides that upon termination of the Block-Gold Bond agreement, the consulting agreement is extinguished. Moreover, the Himmel–Gold Bond agreement specifically provides for the termination of the Block-Gold Bond agreement and to be replaced with a new royalty contract. Thus, the trial justice erred in concluding that after the Himmel–

Gold Bond agreement was in effect, Andrew and Lindelle were entitled to continuing royalties pursuant to their consulting agreement.

We further note that Garey's decision to pay plaintiffs a portion of the $300,000 advance from Himmel was not a continuation of the consulting agreement. Instead, both the testimony of Andrew and the deposition of Garey clearly establish that Andrew, in fact, secured Himmel as the purchaser of the rights to the products from Block. In his deposition, Garey states that the additional payment was merely a "finder's fee."

Because we conclude that the trial justice erred by finding that Andrew and Lindelle were entitled to continuing royalties under the Himmel–Gold Bond agreement, we need only address defendants' claims relating to the royalties due Lois under the property settlement agreement and the trial justice's refusal to grant a continuance before trial.

## IV

### Property Settlement Agreement

■ Just as we concluded that the consulting agreement did not entitle Andrew and Lindelle to continuing royalties under the Himmel–Gold Bond agreement, we also conclude that the property settlement agreement did not entitle Lois to any royalties after the Block-Gold Bond agreement terminated.

According to the terms of the property settlement agreement between Lois and Garey:

"[The parties acknowledge that Gold Bond] is entitled to receive royalties from [Block] pursuant to contractual agreement. The parties further acknowledge that [Gold Bond] has a contractual agreement whereby 50 [percent] of said royalties received from [Block]

are paid to a third party. * * * The parties agree that [Lois] shall receive from [Gold Bond] * * * 40 [percent] of [the remaining 50 percent of royalties] for a period of [four] years[.]"

By its terms, the property settlement agreement, like the consulting agreement, did not allow for continuing royalties after the Block-Gold Bond agreement ceased to exist. Consequently, the trial justice erred when he ordered Garey to continue to pay Lois royalties after the Himmel–Gold Bond agreement was in effect.

## V

### Continuance

Finally, defendants argue that the scheduling justice abused his discretion by failing to grant a continuance before trial. We disagree.

■ It is well settled that "[a] motion for a continuance is addressed to the sound discretion of the trial justice, and his or her decision will not be overturned on appeal absent an abuse of discretion." *State v. Bruyere,* 751 A.2d 1285, 1287 (R.I. 2000) (quoting *State v. Gatone,* 698 A.2d 230, 239 (R.I.1997)). Furthermore, once "a judge has decided an interlocutory matter in a pending suit, a second judge, confronted at a later stage of the suit with the same question in the identical manner, should refrain from disturbing the first ruling." *Paolella v. Radiologic Leasing Associates,* 769 A.2d 596, 599 (R.I.2001) (quoting *Commercial Union Insurance Co. v. Pelchat,* 727 A.2d 676, 683 (R.I. 1999)).

■ In the instant case, the scheduling justice did not abuse his discretion by refusing to grant a continuance before trial. As discussed supra, Garey could have appeared at trial, but instead, chose to remain in Florida. It was not an abuse of discretion to deny the continuance. Moreover, once the scheduling justice de-

nied the continuance, it became the law of the case, and the trial justice did not err in refusing to disturb that ruling.

## Conclusion

Accordingly, the defendants' appeal is denied in part and sustained in part. The judgment of the Superior Court is affirmed in part and reversed in part. The papers of the case are remanded to the Superior Court where judgment for the plaintiffs is to be vacated and judgment entered for the defendants.