**GRANOFF REALTY II, LIMITED PARTNERSHIP**

v.

**Thomas ROSSI, in his Capacity as Tax Assessor for the City of Providence.**

No. 2002–235–Appeal.

Supreme Court of Rhode Island.

May 30, 2003.

Richard A. Licht, Providence, for Plaintiff.

Richard G. Riendeau, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS and GOLDBERG, JJ, and WEISBERGER, C.J. (Ret.).

## O P I N I O N

PER CURIAM.

The defendant, Thomas Rossi, in his capacity as Tax Assessor for the City of Providence (the city), appeals the entry of judgment in favor of the plaintiff, Granoff Realty II, Limited Partnership, in its petition for relief from assessment of taxation. We heard arguments from both sides on May 8, 2003, pursuant to an order that the parties show cause why the issues raised should not be summarily decided. Upon hearing the arguments of counsel and examining the memoranda filed by the parties and the record of the proceedings below, we conclude that cause has not been shown, and that the case should be decided at this time. We deny the city's appeal.

The plaintiff appealed the city's 1996, 1997, 1998, and 1999 tax assessments of its group of properties, collectively known as the Turk's Head properties [1], in downtown Providence. Only the appeals of the 1997 and 1999 assessments [2] are before us now. Less than a month before trial was scheduled to begin on the 1997 and 1999 assessments, the city filed a motion to amend its answer to plaintiff's complaint to include the affirmative defense that plaintiff had failed to file an adequate account for either period. This motion was denied, and the case proceeded to trial without a jury. The trial justice entered judgment for plaintiff on April 2, 2002. She agreed with plaintiff's expert witness and concluded that the 1997 value of the properties was $4,200,000, and that the 1999 value was $5,500,000. Accordingly, she found that plaintiff overpaid its taxes by a total amount of $440,108 and she entered judgment for plaintiff in that amount, plus $125,328 in interest.

The first issue is whether the hearing justice [3] erred in denying the city's

1. The properties consist of three integrally related lots: lot No. 121, the Turk's Head Building, built in 1913 and one of Providence's oldest and most distinct high-rise office buildings; lot No. 126, which serves as a patio for the Turk's Head Building; and lot No. 87, which serves as a parking lot for the building's tenants.

2. Tax bills based upon these assessments were issued the following years: 1998 and 2000.

3. The hearing justice was a different Superior Court justice than the trial justice in this case.

motion to amend its answer by adding the affirmative defense of failure to present a sufficient account. Under Rule 15(a) of the Superior Court Rules of Civil Procedure, after a responsive pleading has been served and an action has been placed upon the trial calendar, "a party may amend [its] pleading[s] only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." We have held that "leave to amend * * * lies within the sound discretion of the trial justice." *Wachsberger v. Pepper*, 583 A.2d 77, 78 (R.I.1990). Nonetheless, "Rule 15(a) liberally permits amendment absent a showing of extreme prejudice." *Wachsberger*, 583 A.2d at 78. Accordingly, leave to amend should be denied only when the nonmoving party can establish that it would be unduly prejudiced by the amendment. *Id.* at 78–79.

At the October 10, 2001 hearing on the city's motion to amend its answer to include an affirmative defense of failure to file an account, plaintiff argued that the city's proposed amendment would be unfair. The plaintiff noted that the case originally had been scheduled for trial in August 2001, but that plaintiff had agreed to the city's request for a continuance. The case had been rescheduled for trial to begin on October 15, 2001. The city did not file its motion to amend until September 17, 2001. The plaintiff, in objecting to this motion, noted that it did file accounts for the periods in question, and that the amendment would be extremely prejudicial because it would take time to prepare to defend the sufficiency of those accounts:

> "We're being forced not just to burrow through [the accounts we filed] * * * but [defendant] is now raising in his

motion that he's going to question the adequacy of these accounts, whether they are full, fair and true according to the statute. * * * [W]e're now going to have to try, at the case, whether or not we left something out [of the accounts] that's substantial or not substantial. We haven't prepared for that."

We hold that plaintiff met its burden in opposing the city's motion to amend, and that it was not an abuse of discretion for the trial justice to deny the motion. The plaintiff may well have been extremely prejudiced had the city been granted leave to amend, considering the lateness of defendant's motion, its proximity to trial, and the significant work plaintiff would have needed to undertake to prepare for the new legal issue. The fact that the trial actually did not commence until six months after the hearing on the motion is irrelevant because, at the time of the hearing, the trial was scheduled to commence within a week.[4]

■■■■ The next issue is whether the trial justice erred in finding that plaintiff satisfied its burden of demonstrating that the city incorrectly assessed the value of the Turk's Head properties for the years 1997 and 1999. We accord great deference to the findings of fact of a trial justice sitting without a jury, and will disturb such findings only when the justice misconceives or overlooks material evidence or otherwise is clearly wrong. *Ferland Corp. v. Bouchard*, 626 A.2d 210, 214 (R.I.1993). It is the tax assessor's duty to ascertain the fair market value of real estate for tax purposes, and tax assessors are entitled to a presumption that they have performed this official act properly. *Id.* at 215. Accordingly, the "burden of proof is on the

---

**4.** The principal reason for the continuance was the filing of a petition for issuance of a writ of certiorari in this Court to review the denial of the city's motion to amend. This petition was denied January 17, 2002.

taxpayer to establish * * * that defendant assessor has set a value on the subject property that is greater than its full and fair cash value." *Id.* (quoting *Kargman v. Jacobs,* 113 R.I. 696, 703, 325 A.2d 543, 547 (1974)). When the value is in dispute, a "trial justice has the authority to accept the opinion of one valuation expert and reject the opinion of another valuation expert." *Willow Street Associates LLP v. Board of Tax Assessment Review,* 798 A.2d 896, 900 (R.I.2002) (per curiam).

■ The plaintiff's expert witness, Thomas S. Andolfo, a real estate appraiser and consultant who also had been a tenant of the Turk's Head Building in the past, testified that he used the income approach to ascertain the value of the Turk's Head properties. This method entails applying a capitalization rate representing a fair return on the investment to the estimated net annual income produced by the property. *Ferland,* 626 A.2d at 212 n. 4. Andolfo applied two market-driven methods to derive capitalization rates. To derive the net annual incomes to which he applied the capitalization rates, Andolfo looked solely to the actual income the properties produced in each year, which he determined using the properties' lease and operating expense information. Andolfo testified that the actual income was most relevant to ascertaining the true value of the properties because the Turk's Head "is not similar to other properties in the financial district." In particular, he said that it was important to use actual incomes, which took into account the Turk's Head Building's historically high vacancy rate of more than 40 percent—well above the typical vacancy rate in downtown Providence— because this vacancy rate was based on "inherent limitations" in the building. He stated:

"I was a tenant there and I can talk firsthand that the vacancy rate was a true reflection of the physical problems with the building. It had nothing to do with the management. It had nothing to do with the rent they were getting in the marketplace for tenants. It was all due to the functional and physical problems associated with the building.

"* * *

"I could just go on and on and talk about all the problems associated with the Turks [*sic*] Head Building. So that's the reason why if you applied a market approach, the adjustments would be so subjective that it would be difficult to support."

The city argues that the trial justice erred when she accepted Andolfo's valuation in rendering judgment for plaintiff because, by using the actual income figures, Andolfo did not take into account the fair rental value of the properties. The city argues that, without this evidence, plaintiff did not meet its burden of proof in disputing a property tax assessment, and thus the city was entitled to judgment as a matter of law. We disagree.

■ We hold that the trial justice in this case did not err in accepting Andolfo's testimony and determining that plaintiff had met its burden of proof. Actual income can be quite useful to a property valuation, especially when, as here, there is testimony that the property has inherent flaws and that the income resulted from arms-length negotiations for leases. We have upheld a judgment for a plaintiff in a tax assessment case in which the plaintiff's expert used actual income, at the behest of the trial justice, in its valuation. *Ferland,* 626 A.2d at 212. The crucial question in evaluating an assessment based on actual income is whether the actual income indicates the property's capacity for earning income. *Kargman v. Jacobs,* 113 R.I. 696, 705–06, 325 A.2d 543, 548 (1974). The plaintiff's expert witness gave extensive

testimony that the actual rentals reflected the fair market rental value of the property, and we cannot say that the trial justice erred when she accepted that witness's valuations based in part on that assessment.

The city's sole expert witness at trial was its tax assessor, Thomas Rossi. Rossi also used the income approach in appraising the Turk's Head properties.[5] To determine the properties' estimated net annual income, he used many of the figures relating to the properties that Andolfo had listed in his reports, but Rossi's analysis differed from Andolfo's in two significant ways. First, Rossi estimated the rental value to be $20 per square foot for the whole Turk's Head Building, which Andolfo's report had listed as the top value in a range of rents charged. He chose the highest of Andolfo's figures because the properties were "located in what [he felt] is the second best neighborhood in the City of Providence insofar as financial commercial uses." Andolfo, in contrast, had testified that $17 per square foot is the average fair market rent for an office building of the Turk's Head's class in downtown Providence, and that the actual rents reflected this figure. Rossi also departed dramatically from Andolfo's evaluation by applying a market-derived theoretical vacancy rate of 18 percent in determining the potential income the properties could achieve. Andolfo, however, had used the actual income precisely because he thought that the realistic vacancy rate of the building was much greater than 18 percent because of the "inherent limitations" of the Turk's Head Building.

The trial justice essentially found the plaintiff's expert, Andolfo, to be much more persuasive than the assessor. The trial justice, acting as fact-finder, concluded that "Andolfo testified very credibly to the properties' value for the two years at issue. His opinion remained unimpeached by the cross-examination and by the other evidence in this case." In contrast, the trial justice found numerous problems with the testimony of the city's expert witness, Rossi. The justice noted:

"Mr. Rossi is a schoolteacher who bumped from job to job in the real estate business before landing a job with the City of Providence. His opinion and analysis epitomized all that is wrong and dangerous about using the income approach to real estate valuation.

"* * *

"[I]n this factfinder's estimation, his approach and analysis were founded on pie in the sky assumptions having nothing to do with the reality of these properties. I call it the woulda, coulda, shoulda approach to real estate valuation. It completely ignores the reality of the building's condition on the date of the assessment and looks, instead, to the building's capacity for earning if it was something substantially different than it was, a Class C or marginally Class B building fraught with a multitude of problems.

"* * *

"This factfinder found the tax assessor's methodology to be faulty and his assumptions of fact to be false. As such, I gave no weight whatsoever to his opinion. He was not a credible witness either. Clearly his estimation of the property value was contrived to meet the assessment."

We conclude that the trial justice did not abuse her discretion in accepting the opinion of the plaintiff's evaluation expert and

5. The original assessment derived from the 1987 revaluation was based upon replacement cost minus depreciation. Neither of the expert witnesses used this method at trial.

rejecting the assessment of the tax assessor.

Accordingly, we deny and dismiss the city's appeal. We affirm the judgment of the Superior Court, to which we remand the papers in this case.

Justice FLAHERTY did not participate.