The GERFFERT COMPANY,
INC., Plaintiff,

v.

WILLIAM J. HIRTEN COMPANY,
LLC, James Dean, and ABC
Companies, Defendants.

C.A. No. 10–101 S.

United States District Court,
D. Rhode Island.

Sept. 7, 2011.

Brenda Coville Harrigan, Gunning & Lafazia, Inc., Warwick, RI, Joshua J. Kaufman, Meaghan H. Kent, Venable, LLP, Washington, DC, for Plaintiff.

Jacqueline A. Criswell, Tressler LLP, Chicago, IL, John J. Barton, Robert C. Shindell, Taylor, Duane, Barton & Gilman, LLP, Providence, RI, for Defendants.

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

Before the Court are two motions in this copyright infringement dispute between

Plaintiff Gerffert Company, Inc. ("Gerffert") and Defendants William J. Hirten Company, LLC ("Hirten LLC"), James Dean, and ABC Companies[1] (collectively, "Defendants"). The first is Plaintiff's appeal of Magistrate Judge David L. Martin's Memorandum and Order (ECF No. 53 (hereinafter "Order")) granting in part Defendants' motion to deem admitted its undisputed facts. The second is Plaintiff's objection to the Magistrate Judge's Report and Recommendation (ECF No. 55 (hereinafter "R & R")) granting Defendants' motion for summary judgment. For the reasons below, both motions are denied, and summary judgment will enter for Defendants.

The relevant facts, procedural background, and analysis are fully set forth in the R & R, which the Court adopts *in toto.* The Court limits its discussion to those facts pertinent to the motions presently before it.

I. Order Granting in Part Defendants' Motion to Deem Its Undisputed Facts Admitted

The April 3, 2010 Order deemed admitted certain facts in Defendants' (corrected) statement of undisputed facts ("SUF") based on Plaintiff's failure to adequately or properly dispute Defendants' undisputed facts in its statement of disputed facts ("SDF"). Plaintiff appeals the Order. As it is nondispositive, this Court will defer to the conclusions of the Magistrate Judge unless they are "clearly erroneous" or "contrary to law." Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A).

The Order deemed admitted all but four of Defendants' undisputed facts[2] upon finding Plaintiff's SDF variously "cluttered" with irrelevant material, (Order 6), lacking "evidence supporting its contention[s]," (*id.* at 7–8), "not responsive" or "not disput[ing] the fact which Defendants have stated is undisputed," and containing hearsay (*id.* at 8). The Magistrate Judge further found that Plaintiff's "lengthy, complex, and repetitious statement of disputed facts complicates matters and greatly increases the burden on this Court." During this Court's hearing on the matter, it inquired of Plaintiff's counsel about the unusual character of its SDF. Counsel acknowledged that the submission was "a bit unorthodox" but stated that Plaintiff "very much wanted to present his side of the story in his own words, in his own voice." (Hr'g Tr. 5, Feb. 10, 2011.)

L.R. Cv. 56 is not intended to be an opportunity for parties to spin their version of the facts into a gratuitous, self-serving narrative. Rather, it is a means of "focusing a district court's attention on what is—and what is not—genuinely controverted." *Calvi v. Knox County,* 470 F.3d 422, 427 (1st Cir.2006). Courts are therefore under no obligation "to ferret through the record to discern whether any material fact is genuinely in dispute." *CMI Capital Mkt. Inv., LLC v. González–Toro,* 520 F.3d 58, 62 (1st Cir.2008). The First Circuit has stressed the importance of complying with "local rules similar to Local Rule 56," stating:

Given the vital purpose that such rules serve, litigants ignore them at their peril. In the event that a party opposing summary judgment fails to act in accordance with the rigors that such a rule imposes, a district court is free, in the exercise of its sound discretion, to

---

**1.** ABC Companies are, as of yet, unspecified customers of Hirten LLC.

**2.** The Magistrate Judge found Defendants' SUF ¶¶ 5, 30, 32, and 33 disputed but not material.

accept the moving party's facts as stated.

*Rios–Jimenez v. Principi,* 520 F.3d 31, 38 (1st Cir.2008) (citations omitted).

■ The Magistrate Judge went beyond the call of duty by poring through Plaintiff's SDF and individually assessing whether, and the extent to which, each of Defendants' forty-five undisputed facts should be deemed admitted. Evincing further attentiveness, the Magistrate Judge in several instances deemed admitted only portions of the paragraphs contained in Plaintiff's SDF, excising any facts he thought were properly in dispute. In the face of this careful appraisal, Plaintiff's arguments on appeal, which essentially rehash those previously rejected, fail to demonstrate that the Magistrate Judge committed clear error in granting in part Defendants' motion to deem admitted its SUF. The Order is affirmed.

## II. Summary Judgment

The following is set forth in the R & R in further detail, but is recounted here for ease of reference. In 2006, Plaintiff Gerffert purchased from artist Larry Ruppert a non-exclusive license to use certain works of art in a religious book (the "Original Works"). (SUF ¶ 40.) In July 2007, Dean, a Gerffert employee at the time, approached Ruppert about modifying the Original Works (the "Modified Works"). Dean explained to Ruppert that the Modified Works were for the use of a new company being formed called Hirten LLC, adding that Gerffert's president, Stephen Panigel, planned to retire and sell Gerffert's assets to Hirten LLC. (*Id.* ¶¶ 41–42.) Ruppert created the Modified Works for $4,240 and invoiced the bill to HMH Religious Manufacturing Co., a company owned and operated by Dean. (*Id.* ¶¶ 3, 43.) A month later, in August 2007, Hirten LLC registered with the State of Delaware, and thereafter refunded Dean for the Modified Works. (*Id.* ¶¶ 22, 44.) On June 22, 2009, Ruppert assigned his entire interest in the Original Works to Gerffert, conferring an exclusive license to the copyrights. (*See* Am. Compl., Ex. 2, ECF No. 16–3.) On March 3, 2010, Gerffert, through counsel, informed Hirten LLC that it was terminating whatever license it may have had in the Modified Works. (Panigel Reply Decl., Ex. L., ECF No. 30–4.)

Gerffert then brought suit against Defendants alleging that (1) Hirten LLC's sales of a religious book containing the Modified Works infringed its copyrights on the Original Works, and (2) Dean breached his fiduciary duty and duty of loyalty by commissioning the Modified Works and by interfering with negotiations between Gerffert and Hirten LLC's predecessor company, William J. Hirten, Inc. Gerffert asks that any license Hirten LLC received to use the Modified Works be held in a constructive trust for Gerffert or rescinded as fraudulently obtained.

On April 24, 2010, Defendants moved for summary judgment claiming that because Dean commissioned the Modified Works on behalf of and for the use of Hirten LLC, and Ruppert understood this, Ruppert conferred upon Hirten LLC an irrevocable nonexclusive license to use the Modified Works. Defendants further aver that Dean did not violate any fiduciary duties owed to his employer, Gerffert, because he commissioned the Modified Works with Panigel's implicit consent. The Magistrate Judge heard arguments and found as follows:

> The record supports Defendants' contention that Ruppert granted Hirten LLC a non-exclusive license to use the Modified Works in a communion book. Gerffert's arguments for re[s]cission or imposition of a constructive trust based

on fraud lack evidentiary support. Similarly, its argument that any license would not be to Hirten LLC ignores the declarations of Dean and Ruppert, the two individuals directly involved in the transaction. Because Hirten LLC paid consideration for the license, it is not subject to termination by Gerffert. Lastly, Dean did not breach any fiduciary duty to Gerffert after Panigel told Dean that he was retiring and was going to sell or liquidate the business.

(R & R 541).[3]

Gerffert now objects to the R & R, claiming that it erroneously: (1) disregards disputed material facts, (2) finds the Statute of Frauds inapplicable to Ruppert and Dean's agreement concerning the Modified Works, (3) concludes that Dean acted as a corporate promoter for Hirten LLC when he commissioned the Modified Works, and (4) confuses the legal standard for contracts lacking a term of duration. The Court addresses each of these objections in turn.

### A. Whether the Existence of Disputed Material Facts Renders Summary Judgment Inappropriate

Gerffert argues that the Magistrate Judge ignored a "plethora of highly disputed facts, which render summary judgment inappropriate." (Pl.'s Obj. to R & R 532, ECF. No. 61.) It cites several examples of "issues of fact[s]" that it believes the Magistrate Judge mistakenly "accept[ed] on face value." (*Id.*) However, upon reviewing the R & R and relevant submissions, the Court is satisfied that the Magistrate Judge rested his conclusions on undisputed facts. Moreover, the fact issues that Gerffert alleges are immaterial to the main issue in this case: whether Ruppert conferred to Hirten LLC a nonexclusive license to use the Modified Works.

■ The Court adopts the R & R's conclusion that he did. "[A]n implied nonexclusive license has been granted when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir.1996) (citing *Effects Assocs. v. Cohen*, 908 F.2d 555, 558–59 (9th Cir.1990)); accord *John G. Danielson, Inc. v. Winchester–Conant Props., Inc.*, 322 F.3d 26, 41–42 (1st Cir.2003).

■ Here, the material undisputed facts make clear that (1) Dean commissioned Ruppert to create the Modified Works on behalf of Hirten LLC, (2) Ruppert created the Modified Works for Hirten LLC and invoiced Dean, and (3) Ruppert understood that the Modified Works were to be used and distributed by Hirten LLC. (*See generally* SUF ¶¶ 41–44; Corrected Decl. of James Dean, ECF No. 23; Decl. of Larry Ruppert, ECF No. 20–4.) Hirten LLC therefore received a non-exclusive license to use the Modified Works that, once conferred, insulated it from liability for infringement. *See I.A.E.*, 74 F.3d at 775 ("[T]he existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement." (citing *Effects*, 908 F.2d at 559)). Gerffert's remaining objections to the R & R attempt to chip away at this conclusion on various other grounds.

### B. Statute of Frauds

■ Gerffert objects to the Magistrate Judge's rejection of its argument that the

---

**3.** The R & R also found that Gerffert offered no evidence to support its allegation that Dean interfered with negotiations between Gerffert and Hirten LLC's predecessor company. The Court agrees and will not address the matter further.

agreement between Ruppert and Dean falls under the statute of frauds. Specifically, it argues that performance of the non-exclusive license could not have commenced until the Modified Works were incorporated into a physical embodiment (here, a religious book). Thus, because Dean suggested that this "would likely not occur for 18 months," (Gerffert's Mem. in Supp. of Obj. to R & R 537, ECF No. 61 (citing Corrected Dean Decl. ¶ 26)), Gerffert argues that Dean's own words demonstrate that the contract could not be fully performed within a year from its making.

█ Gerffert's objection fails for two reasons. First, it displays a fundamental misunderstanding of the statute of frauds. The question is not whether performance "would likely not occur" within one year (*id.*), but whether performance *cannot* occur within one year. *See* R.I. Gen. Laws § 9–1–4. Moreover, the weight of authority suggests that the statute of frauds has no applicability where, as here, the existence of a nonexclusive license is implied by the conduct of the parties and asserted as an affirmative defense.

> In contrast to an exclusive license, a nonexclusive license does not amount to a transfer of copyright ownership.... Therefore, a nonexclusive license is not governed by the statute of frauds provision of 17 U.S.C. § 204, and may be granted "orally, or may even be implied from conduct." 3 Melvin B. & David Nimmer, *Nimmer on Copyright,* § 10.03[A][7] (2001). The existence of a nonexclusive license, if granted to the defendant in an infringement action, operates as an affirmative defense to a claim of infringement. *Johnson v. Jones,* 149 F.3d 494, 500 (6th Cir.1998); *I.A.E.,* 74 F.3d at 775; *Effects,* 908 F.2d at 559.

*John G. Danielson, Inc. v. Winchester–Conant Props., Inc.,* 186 F.Supp.2d 1, 18 (D.Mass.2002); *accord Holtzbrinck Pub. Holdings, L.P. v. Vyne Commc'ns, Inc.,* No. 97 CIV 1082(KTD), 2000 WL 502860, *6 (S.D.N.Y. Apr. 26, 2000) ("A license implied by the law is an exception to the proscriptions of the Statute of Frauds."); *Natkin v. Winfrey,* 111 F.Supp.2d 1003, 1012 (N.D.Ill.2000) ("statute of frauds is simply inapplicable to a copyright license implied by law from the parties' conduct").

C. Whether the Non–Exclusive License is Revocable

█ Gerffert also objects to the R & R for concluding that Hirten LLC's non-exclusive license to the Modified Works is irrevocable. Specifically, Gerffert contends that when it acquired an exclusive license and copyrights to the Original Works in 2009, those rights included Ruppert's authority to terminate the non-exclusive license to the Modified Works, and therefore it properly terminated any license Hirten LLC may have had to the Modified Works through its March 3, 2010 letter from counsel. Defendants counter by pointing to the established rule that a non-exclusive copyright license is *irrevocable* if supported by consideration. *See Asset Mktg. Sys., Inc. v. Gagnon,* 542 F.3d 748, 757 (9th Cir.2008) (holding that "because [plaintiff] paid consideration, this [non-exclusive] license is irrevocable" (citing *Lulirama Ltd. v. Axcess Broadcast Servs., Inc.,* 128 F.3d 872, 882 (5th Cir. 1997) (holding same))). As the R & R notes, if a license supported by consideration were revocable, then it would be illusory. (R & R 540.)

Gerffert responds that, notwithstanding the existence of consideration, the non-exclusive license is still revocable because it is of an unspecified duration. *See Hilton v. Fraioli,* 763 A.2d 599, 602 (R.I.2000). It is true that, "[w]here a contract formed in a particular state is silent with respect

to certain terms, state rules of enforcement and interpretation may serve to fill those gaps." *Latin Am. Music Co. v. Am. Soc'y of Composers Authors & Publishers*, 593 F.3d 95, 99 (1st Cir.2010). Thus, Gerffert asserts that its March 3, 2010 letter properly terminated any non-exclusive license Hirten LLC may have had to the Modified Works because, in Rhode Island, "when the duration of a contract is uncertain, the contract is to be considered terminable at will." *Hilton*, 763 A.2d at 602 (quotation and citation omitted). The R & R dismissed this argument, finding that Gerffert's Rhode Island authorities "deal with employment contracts, not licenses." (R & R 539.)

In its objection to the R & R, Gerffert again stresses that Rhode Island courts have "consistently held" that contracts of unspecified duration are terminable at will, adding that this Court has "framed the rule as applying to all service contracts generally." (Gerffert's Mem. in Supp. of Obj. to R & R 538 (citing *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 182 F.R.D. 386, 395 (D.R.I.1998)).) Gerffert, however, conveniently omits any reference to this Court's unambiguous pronouncement in *Ross–Simons* that: "Defendant has not identified, nor has the Court found, any cases in which the Rhode Island courts have extended this rule beyond employment contracts. Furthermore, defendant has not proposed any persuasive rationale to support such an expansion of the rule by this Court." *Ross–Simons*, 182 F.R.D. at 395 (footnote omitted). In the absence of such authority or any rationale suggesting why a non-employment contract of an indefinite duration is (or should be) terminable at will, this Court will not so find.

### D. Whether Dean Acted as a Corporate Promoter

Finally, Gerffert argues that the R & R's determination that Dean acted as

corporate promoter for Hirten LLC when he commissioned the Modified Works should be rejected. A promoter is "every person acting, by whatever name, in the forming and establishing of a company at any period prior to the company becoming fully incorporated." *Dickerman v. N. Trust Co.*, 176 U.S. 181, 203–04, 20 S.Ct. 311, 44 L.Ed. 423 (1900) (quotation and citation omitted); *accord Café La France, Inc. v. Schneider Secs., Inc.*, 281 F.Supp.2d 361, 373 (D.R.I.2003) ("A corporate promoter is one who, alone or with others, participates in the formation of a corporation or some other joint business venture, and takes steps to put it in a position to transact the business for which it is intended.").

In its objection, Gerffert does not attempt to contradict Defendants' evidence that Dean acted as a promoter. Rather, it argues that the promoter question is one of fact and that Defendants "failed to provide sufficient evidence to support" that Dean is, in fact, a promoter. But merely asking for more evidence is not enough to survive summary judgment. *Statchen v. Palmer*, 623 F.3d 15, 18 (1st Cir.2010) ("[E]vidence from the moving party as to specific facts can be accepted by the court where no contrary evidence is tendered by the party opposing summary judgment."). To present a genuine issue of material fact, Gerffert must proffer admissible evidence tending to show that a "reasonable jury" could *not* believe that Dean was acting as a promoter for Hirten when he commissioned Ruppert to create the Modified Works. *See Lockridge v. The Univ. of Maine Sys.*, 597 F.3d 464, 469 n. 3 (1st Cir.2010) ("A dispute about a material fact is 'genuine' only 'if a reasonable jury could resolve it in favor of either party.'" (quoting *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir.2004))).

There can be no doubt that Dean acted as a promoter for Hirten LLC,

whose registration with the State of Delaware on August 10, 2007 conferred Dean with a one-third ownership interest. From April 2007 onward, Dean was an integral participant in the negotiations leading up to the formation of Hirten LLC, attending various business meetings as a presumptive one-third owner. (*See* SUF ¶¶ 11–16.) Dean also participated in a May 22, 2007 meeting with others in order to "finalize the details of forming Hirten LLC." (*Id.* ¶ 16.) Shortly after the meeting, Dean and two others reached an agreement to "go forward" with the formation of Hirten LLC with each as a one-third owner. (*Id.* ¶ 18.) Moreover, Dean and Ruppert (the only relevant parties to the transaction) have both attested, under oath, that when Dean approached Ruppert to commission the Modified Works, they understood that Dean was commissioning the Modified works on behalf of and for the use of Hirten LLC. (*See id.* ¶ 42; Decl. of James Dean ¶ 23, ECF No. 23; Decl. of Larry Ruppert ¶ 2, ECF No. 20–4 ("Dean, on behalf of this new Hirten company, commissioned me to make modifications to the artwork I created in 2006. I entered into an agreement to create this new artwork to be used in a communion book to be sold by the newly created Hirten company.").) After Hirten LLC formed, it ratified the transaction with Ruppert and issued a credit to Dean vis-à-vis HMH, a company owned and operated by Dean. (SUF ¶¶ 3, 43–44.) In light of this undisputed evidence, Dean was a "person acting, by whatever name, in the forming and establishing of a company at any period prior to the company becoming fully incorporated." *Dickerman,* 176 U.S. at 203–04, 20 S.Ct. 311. Thus, the Court adopts the R & R's conclusion that there is no triable issue as to whether Dean acted as a promoter when he commissioned Ruppert to create the Modified Works.[4]

## III. Conclusion

For the reasons set forth above, Plaintiff's appeal of the Order is DENIED, objections to the R & R are DENIED, and Defendants' motion for summary judgment is GRANTED.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

DAVID L. MARTIN, United States Magistrate Judge.

Before the Court is the Motion for Summary Judgment of William J. Hirten Co., LLC and James Dean and Request for Oral Argument (Docket ("Dkt.") # 18) ("Motion for Summary Judgment" or "Motion"). The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated below, I recommend that the Motion be granted.

## I. Facts

### A. Gerffert, Panigel, Bonella, and Dean

Plaintiff The Gerffert Company, Inc. ("Plaintiff" or "Gerffert"), was a distribu-

---

4. Moreover, to the extent that Gerffert objects to the R & R's conclusion that Dean did not breach any fiduciary duties or commit fraud against Gerffert, those objections fail for the reasons set forth by the Magistrate Judge in §§ III(A)(1) & (4) and III(B) on the R & R. Furthermore, to the extent it was argued at the hearing on this matter, the Court also rejects Gerffert's argument that Dean was precluded from transferring the Modified Works to Hirten LLC in light of a bright-line rule forbidding non-exclusive licensees from transferring their licenses. A non-exclusive licensee can transfer his license with the permission of the copyright owner. *See ITOFCA, Inc. v. MegaTrans Logistics, Inc.,* 322 F.3d 928, 941 (7th Cir.2003) (collecting cases and commentaries). For the reasons stated above, it is clear that Ruppert knew that the Modified Works were created for Hirten LLC.

tor for products made by Fratelli Bonella, s.r.l. ("Bonella"), an Italian religious art company.[1] Corrected Local Rule 56(a) Statement of Undisputed Facts of William J. Hirten Co. LLC and James Dean (Dkt.# 28) ("Defendants' Corr. SUF") ¶ 1. In January 2005, Stephen Panigel ("Panigel"), the president of Gerffert, hired Defendant James Dean ("Dean"), to work at Gerffert as an employee. *Id.* ¶ 2. Prior to this, Dean had worked an as independent sales representative for Gerffert for seventeen years. *Id.*

Dean owned and operated HMH Religious Manufacturing Co., Inc. ("HMH"), a company which makes and sells religious jewelry, and he continued to operate HMH after being hired as a Gerffert employee. *Id.* ¶ 3. Panigel and Dean had agreed when Dean was hired that "Dean would put in whatever time he needed to at HMH . . . ," Local Rule 56 Statement of Disputed Facts ("Plaintiff's SDF") ¶ 3, and that this resulted in Dean working three days a week for Gerffert and two days a week for HMH, *see* Defendants' Corr. SUF ¶ 3; Memorandum and Order Granting in Part Motion to Deem Defendants' Statement of Undisputed Facts Admitted (Dkt.# 53) ("M & O Re Defendants' SUF") at 9 (deeming Defendants' Corr. SUF ¶ 3 admitted); *see also* Reply Declaration of Stephen Panigel in Further Support of Motion for Preliminary Injunction and in Opposition to Cross–Motion for Summary Judgment (Dkt.# 30–1) ("Panigel Reply Decl.") ¶ 37 ("By the time Dean

left Gerffert in 2007 there were many weeks when he only showed up at Gerffert Tuesday, Wednesday, and Thursday. I allowed him to do it. . . ."). During the time that Dean worked at Gerffert, Mike Tally ("Tally"), an employee of Gerffert, and Dean lived at Panigel's New York residence, and the three often had dinner together. Defendants' Corr. SUF ¶ 4.

## B. The Discussions and Agreements

Early in 2004, Andrea Bonella ("Andrea") and Panigel discussed broadening Gerffert's range of products. *Id.* ¶ 5; Plaintiff's SDF ¶ 5.[2] In the spring of 2004, Panigel informed Andrea that the best way to widen Bonella's product range and increase sales was to merge with another religious company that would complement Gerffert's line. Defendants' Corr. SUF ¶ 6. Panigel informed Andrea that William J. Hirten, Inc. ("Hirten New York" or "Old Hirten"), was the best prospect and that he was negotiating to merge Gerffert with this company. *Id.* On February 4, 2005, Gerffert, HMH, and Hirten New York signed a non-binding letter of intent. *Id.* ¶ 7. The non-binding letter declared the desire of the three companies to form a single entity that would be a full-service manufacturer and supplier of religious articles and merchandise. *Id.*

From February 4, 2005, through May 2007, Gerffert was manufacturing and purchasing merchandise specifically to expand and renovate the Hirten New York prod-

---

**1.** Plaintiff notes that it has been Bonella's "sole and exclusive distributor in the United States" since the 1950's. Local Rule 56 Statement of Disputed Facts (Dkt.# 32) ("Plaintiff's SDF") ¶ 1.

**2.** Andrea Bonella ("Andrea") and Stephen Panigel ("Panigel") disagree as to whose idea it was to increase Gerffert's product range. Andrea states that early in 2004 he "advised Steve Panigel . . . that Bonella wanted Gerf-

fert to increase its range of products." Local Rule 56(a) Statement of Undisputed Facts of William J. Hirten Co. LLC and James Dean (Dkt. # 20) ("Defendants' SUF"), Exhibit ("Ex.") 1 (Declaration of Andrea) ("Andrea Decl.") ¶ 2. Panigel maintains that "[t]he idea of broadening Gerffert's product offering was from Gerffert and Mr. Panigel. . . ." Plaintiff's SDF ¶ 5. This disagreement does not affect resolution of the instant Motion.

uct line. Defendants' Corr. SUF ¶ 8; M & O Re Defendants' SUF at 10 (deeming Defendants' Corr. SUF ¶ 8 admitted). Gerffert also ordered products from Bonella to be sold by Hirten New York. *Id.* In November 2005, Gerffert expressed its intention to buy Hirten New York rather than merging the three companies so that Panigel would have "all the control." Defendants' Corr. SUF ¶ 9; *see also* M & O Re Defendants' SUF at 10 (deeming Defendants' Corr. SUF ¶ 9 admitted). Panigel stated that he intended to create a new company called "The Gerffert–Hirten Co." Defendants' Corr. SUF ¶ 9; *see also* M & O Re· Defendants' SUF at 10 (deeming Defendants' Corr. SUF ¶ 9 admitted).

As of April 2007, Gerffert still had not purchased Hirten New York and Dolores King, the president of Hirten New York, terminated negotiations. Defendants' Corr. SUF ¶ 10; M & O Re Defendants' SUF at 10 (deeming Defendants' Corr. SUF ¶ 10 admitted). After King decided not to sell Hirten New York to Gerffert, Dean, Panigel, and Andrea met to discuss how to proceed with the transaction. Defendants' Corr. SUF ¶ 11; M & O Re Defendants' SUF at 10 (deeming Defendants' Corr. SUF ¶ 11 admitted). Andrea advised that Bonella wanted to continue publishing books with Hirten New York because it could not afford to lose the investment it had made over the last three years. *Id.* At the close of the meeting, Dean, Panigel, and Andrea agreed on a new arrangement under the terms of which a new company, Hirten LLC ("Hirten LLC" or "New Hirten"), would be created to purchase the assets of Hirten New York. Defendants' Corr. SUF ¶ 12; M & O Re Defendants' SUF at 10 (deeming Defendants' Corr. SUF ¶ 12 admitted). HMH, Gerffert, and a new company created by Bonella called Betaquattro would each have a one-third ownership. *Id.*

The next day Dean, Panigel, and Andrea presented this proposal to King, who agreed to it on the condition that the closing take place by the end of 2007. Defendants' Corr. SUF ¶ 13; M & O Re Defendants' SUF at 10 (deeming Defendants' Corr. SUF ¶ 13 admitted). The arrangement also contemplated that products Gerffert had acquired for Hirten New York would be purchased by Hirten LLC. Defendants' Corr. SUF ¶ 14; M & O Re Defendants' SUF at 10 (deeming Defendants' Corr. SUF ¶ 14 admitted). In a May 9, 2007, email, Andrea memorialized the agreement between Bonella, HMH, and Gerffert to create Hirten LLC. Defendants' Corr. SUF ¶ 15; M & O Re Defendants' SUF at 10 (deeming Defendants' Corr. SUF ¶ 15 admitted).

On May 22, 2007, Andrea traveled to New York for a meeting with Panigel and Dean in order to finalize the details of forming Hirten LLC. Defendants' Corr. SUF ¶ 16; M & O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 16 admitted). At this meeting, Panigel stated that he was not satisfied with having only one-third ownership of the new company and announced his intention to retire and rent out his building. Defendants' Corr. SUF ¶ 17; M & O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 17 admitted). Panigel told Andrea and Dean that Bonella's only option would be to buy Gerffert, otherwise he would have to liquidate Gerffert. *Id.*

Andrea was directed by the Bonella board to reject Panigel's proposal. Defendants' Corr. SUF ¶ 18; M & O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 18 admitted). Shortly after the meeting, Andrea and Dean met with King and reached an agreement in principle that the deal would go forward with King becoming a one-third owner instead of Gerffert. ·*Id.* In late May 2007, Andrea

and Dean told Panigel of the terms of this agreement in principle. Defendants' Corr. SUF ¶ 19; M & O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 19 admitted).

### C. The Retirement Email

On May 25, 2007, Panigel emailed Bonella that he was retiring from Gerffert. Defendants' Corr. SUF ¶ 20; M & O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 20 admitted). In his email, Panigel again suggested that Bonella buy Gerffert or he would be forced to liquidate Gerffert. *Id.* Panigel emphasized that he had invested over four million dollars in constructing a second floor on his building for Hirten New York and in acquiring merchandise for Hirten. *Id.* He also mentioned that Dean and Tally had been "hired primarily to work in developing the Hirten line." Local Rule 56(a) Statement of Undisputed Facts of William J. Hirten Co. LLC and James Dean (Dkt.# 20) ("Defendants' SUF"), Exhibit ("Ex.") 1 (Declaration of Andrea Bonella ("Andrea Decl.")), Ex. C (Email from Panigel to Bonella of 5/25/2007 (the "Retirement Email")) at 1.

### D. Subsequent Events

Beginning in June 2007 and throughout the summer, Andrea and Mario Bonella, another owner of Bonella, had ongoing negotiations on behalf of Hirten LLC with Panigel about either buying Gerffert or the merchandise Gerffert had acquired for Hirten New York. Defendants' Corr. SUF ¶ 23; M & O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 23 admitted). Hirten LLC was registered with the State of Delaware on August 10, 2007. Defendants' Corr. SUF ¶ 22.

In September 2007, Panigel met with Bonella in Milan, Italy, to negotiate a deal where Bonella would buy much of the merchandise that Gerffert had bought for Hirten New York over the years and to discuss the possible sale of Gerffert to Bonella. Defendants' Corr. SUF ¶ 24; M & O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 24 admitted). Panigel signed two letters of intent while in Milan dated September 26, 2007. Defendants' Corr. SUF ¶ 25; M & O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 25 admitted). The first stated that Bonella and Hirten LLC would purchase unsold inventory Gerffert had acquired for Hirten New York. *Id.* The second letter of intent contemplated that Bonella would purchase the assets of Gerffert. Defendants' Corr. SUF ¶ 26; M & O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 26 admitted). It contained provisions for payment to Gerffert or Panigel of a percentage of gross sales of certain Gerffert merchandise and that Panigel would receive 20% of the gross profits in future fundraising business for the rest of his life. *Id.* Andrea told Panigel that if Bonella purchased the Gerffert assets, Bonella would transfer them to Hirten LLC. Defendants' Corr. SUF ¶ 27; M & O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 27 admitted). In December 2007, Bonella and Gerffert executed a Merchandise Acquisition Agreement, which provided for payment for the merchandise Gerffert had purchased for Hirten New York. Defendants' Corr. SUF ¶ 28; M & O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 28 admitted). Bonella then transferred the merchandise it bought from Gerffert to Hirten LLC. *Id.*

After Panigel sent the Retirement Email to Bonella on May 25, 2007, he told Dean and Tally that he was retiring. Defendants' Corr. SUF ¶ 31; M & O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 31 admitted in part); *see also*

Panigel Reply Decl. at 30 n. 22 ("Clearly it was necessary that I tell Dean and Tally after I sent my May 25, 2007 email to the Bonellas. The email would not have been very convincing if I hadn't."). During the summer of 2007, Panigel was aware that Tally was supervising the move of the inventory and equipment of Hirten New York in Brooklyn to Hirten LLC in Rhode Island, and Panigel allowed him to do so. Defendants' Corr. SUF ¶ 34; M & O Re Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶ 34 admitted); *see also* Panigel Reply Decl. ¶ 66 ("I knew that Tally and Dean were attending to Hirten's move, and since I still had hopes that Gerffert would be purchased by Fratelli Bonella, I did not prevent it.").

Throughout his employment at Gerffert, Panigel directed Dean to work on developing new products for the Hirten New York line, which Dean did. Defendants' Corr. SUF ¶ 35; M & O Re Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶ 35 admitted). Even after May 2007, Panigel directed Dean to work on developing new products for Hirten LLC including a series of books and biographies of the Saints, holy cards, a rosary folder, and rosary beads. Defendants' Corr. SUF ¶ 36; M & O Re Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶ 36 admitted). Panigel told Andrea that he had Dean marketing Hirten merchandise in the summer of 2007 to insure Hirten LLC's success and maximize the value of Gerffert's Hirten New York merchandise. *Id.*

Gerffert paid for Dean and Tally to attend trade shows in August and September 2007. Defendants' Corr. SUF ¶ 37; M & O Re Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶ 37 admitted in part). The business cards used by Dean and Tally were paid for by Gerffert and bore the name Gerffert/Hirten/HMH. Defendants' Corr. SUF ¶ 38; M & O Re

Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶ 38 admitted in part). Panigel was aware of this and did not object to it. *Id.* Even in November 2007, Panigel was confirming with Bonella that orders should be shipped to the "New Hirten." Defendants' Corr. SUF ¶ 39; *see also* M & O Re Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶ 39 admitted).

### E. The Works of Art

In 2006, Gerffert purchased a non-exclusive license to use nineteen works of art ("Original Works") created by artist Larry Ruppert ("Ruppert") for use in a communion book, *The Little Child of God.* Defendants' Corr. SUF ¶ 40; *see also* First Amended Complaint for Copyright Infringement (Dkt. # 16) ("Amended Complaint") ¶ 10. In July 2007, Dean commissioned Ruppert to make modifications to the Original Works ("Modified Works") for use in a communion book. Defendants' Corr. SUF ¶ 41; M & O Re Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶ 41 admitted). Dean explained to Ruppert that the Modified Works were being commissioned on behalf of a new Hirten entity that was being formed. Defendants' Corr. SUF ¶ 42; M & O Re Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶ 42 admitted). He also explained that the President of Gerffert, Panigel, was retiring and planning to sell Gerffert's assets to the new entity to be formed. *Id.* Dean paid Ruppert $4,240 in consideration for the Modified Works, which was invoiced to HMH since the formation of a new Hirten entity was not yet complete. Defendants' Corr. SUF ¶ 43; M & O Re Defendants' SUF at 12 (noting that Plaintiff did not dispute Defendants' Corr. SUF ¶ 43). After Hirten LLC was created, it approved this transaction with Ruppert and issued a credit for the payment. Defendants' Corr. SUF ¶ 44; M &

O Re Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶ 44 admitted).

On June 22, 2009, Ruppert assigned, in writing, all his interest in the Original Works to Gerffert, including the copyrights. *See* Amended Complaint, Ex. 2 (Assignment of Copyright). On March 3, 2010, Gerffert sent a letter to Hirten LLC, stating that Gerffert was terminating whatever license Hirten LLC may have in the Original Works. *See* Panigel Reply Decl., Ex. L (Letter from Kaufman to Shortell of 3/3/10).

### F. The Present Action

In the present action, Gerffert alleges that Defendants are currently offering for sale and selling a new First Communion Book entitled *Child of God* which contains the Modified Works of art and that such sales infringe Gerffert's copyrights.[3] Amended Complaint ¶ 19. Gerffert additionally alleges that Dean breached a fiduciary duty and duty of loyalty to Gerffert when he approached Ruppert in July 2007 and requested that Ruppert produce the Modified Works. *Id.* ¶ 77. Gerffert also alleges that Dean breached his fiduciary duty and duty of loyalty to Gerffert by interfering with negotiations between Gerffert and Hirten New York and its officers. *Id.* ¶ 80.

### II. Summary Judgment Standard

"Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Commercial Union Ins. Co. v. Pesante,*

459 F.3d 34, 37 (1st Cir.2006)(quoting Fed. R.Civ.P. 56(c)); *accord Kearney v. Town of Wareham,* 316 F.3d 18, 21 (1st Cir. 2002). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir.2000)(quoting *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir.1996)).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort & Country Club,* 218 F.3d 1, 5 (1st Cir.2000)(citing *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 672 (1st Cir. 1996)). The non-moving party may not rest merely upon the allegations or denials in its pleading, but must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which it would bear the ultimate burden of proof at trial. *See Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d at 53 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." *ATC Realty, LLC v. Town of Kingston,* 303 F.3d 91, 94 (1st Cir.2002)(quoting *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 842 (1st

---

**3.** In the Amended Complaint, Plaintiff refers to the Modified Works as the "Infringing Work." Amended Complaint ¶ 19; *see also id.* ¶ 20 ("The Infringing Work contains and displays images which are copies of, or are substantially similar to, the [Original Works] of which Plaintiff is the copyright owner, thus infringing Plaintiff's copyright.").

Cir.1993)) (alteration in original)(internal quotation marks omitted).

"[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir.1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. If the evidence presented is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper." *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167, 169 (D.R.I.1991) (citation and internal quotation marks omitted).

## III. Discussion

### A. Copyright Infringement Claims [4]

Defendants seek summary judgment on the copyright infringement claims on the basis that New Hirten has a nonexclusive right to use the Modified Works. *See* Corrected Memorandum of Law in Support of Motion for Summary Judgment of William J. Hirten Co., LLC and James Dean (Dkt. # 27) ("Defendants' Mem.") at 10–13. Defendants rely upon the following facts. In 2006, Gerffert purchased a nonexclusive license from Ruppert to use the Original Works. Defendants' Corr. SUF ¶ 40; *see also id.*, Ex. 4 (Declaration of Larry Ruppert ("Ruppert Decl.")) ¶ 1. In July 2007, Dean commissioned Ruppert to make modifications to the Original Works for use in a communion book. *See* M & O Re Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶ 41 admitted). Dean

explained to Ruppert that these Modified Works were being commissioned on behalf of a new Hirten entity that was being formed. *See id.* (deeming Defendants' Corr. SUF ¶ 42 admitted). Ruppert created the Modified Works, provided them to New Hirten for use in a communion book, and was paid $4,240 in consideration. *See id.* (deeming Defendants' SUF ¶¶ 41–43 admitted); *see also* Ruppert Decl. ¶¶ 2–3. Thus, Defendants contend that "at minimum, Ruppert granted Hirten LLC a nonexclusive license to use the [M]odified [W]orks in a communion book to be sold by Hirten LLC." Defendants' Mem. at 12. The Court agrees.

As the Seventh Circuit has explained:

[T]he existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement. *Effects* [*Assocs. v. Cohen*], 908 F.2d [555] at 559 [ (9th Cir.1990) ]. The concept of an implied nonexclusive license has been recognized not only by *Nimmer*, a preeminent treatise on copyright law,[5] but also by the courts, including this one, which universally have recognized that a nonexclusive license may be implied from conduct. Indeed, implied licenses are like implied contracts. . . . [T]he Ninth Circuit, in *Effects*, held that an implied nonexclusive license has been granted when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work. *Effects*, 908 F.2d at 558–59.

*I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775–76 (7th Cir.1996) (footnotes omitted); *accord*

---

4. These claims are contained in Counts 1–4 of the Amended Complaint. *See* Amended Complaint ¶¶ 39–74.

5. Melville B. Nimmer & David Nimmer, 3 *Nimmer on Copyright* (1995).

*Asset Mktg. Sys., Inc. v. Gagnon,* 542 F.3d 748, 754–55 (9th Cir.2008); *see also Lulirama Ltd., Inc. v. Axcess Broadcast Servs., Inc.,* 128 F.3d 872, 881 (5th Cir. 1997) ("The owner of a copyright is free to grant multiple licenses for different uses of the same material.").

Gerffert makes several arguments, some of which overlap, in support of its contention that Defendants have no license to use the Modified Works. *See* Response in Opposition to Defendants' Motion for Summary Judgment (Dkt.# 30) ("Plaintiff's Response") at 8–16. None are persuasive.

### 1. Alleged Fraudulent Representation

■ Gerffert asserts that Dean breached a fiduciary duty and duty of loyalty to Gerffert when he approached Ruppert in July 2007 and "fraudulently represent[ed] ... that he was, or would be soon, Plaintiff's new owner and ... commission[ed] Mr. Ruppert to create the [Modified Works] to use for his own benefit." Plaintiff's Response at 9. Therefore, Gerffert argues that any license should be held in constructive trust for Gerffert, *see id.* at 9–10, or that the license should be rescinded because of fraud, *see id.* at 10. However, the evidence which Gerffert cites to support its claim that Dean made such a representation is Panigel's account of a telephone conversation which he allegedly had with Ruppert, *see id.* at 10; *see also* Panigel's Reply Decl. ¶ 57. Such evidence is hearsay and not admissible. *See Hlinka v. Bethlehem Steel Corp.,* 863 F.2d 279, 282–83 (3rd Cir.1988) (refusing to consider plaintiff's affidavit in deciding defendants' motion for summary judgment where "many of the statements within the affidavit were hearsay and would be inadmissible unless they qualify as hearsay exceptions"); *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 643 (2nd Cir.1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits

based on personal knowledge, and a hearsay affidavit is not a substitute for ... personal knowledge.")(internal citation omitted). Thus, Panigel's Reply Decl. fails to establish a factual dispute regarding what Dean told Ruppert when he approached him in July 2007. *See Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)("We have interpreted Rule 56 to mean that [t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")(alteration in original)(internal quotation marks omitted); *see also Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir.1993) ("Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment.").

Accordingly, Gerffert's arguments for imposition of a construction trust or for rescission of the license based on fraud lack factual support. Therefore, they are rejected.

### 2. Holder of the License

Gerffert next argues that the license of the Modified Works does not belong to Hirten LLC for two reasons. First, it contends that since HMH issued the check to Ruppert, it was HMH which received the license. *See* Opposition at 11. However, this argument completely ignores Ruppert's declaration which states that Dean commissioned him to make modifications to the art work for a new Hirten company which was in the process of being formed and that he created the new art work for the new Hirten company. Ruppert Decl. ¶¶ 2–3. Indeed, the declarations of both Dean and Ruppert demonstrate that Dean told Ruppert and Ruppert understood that Dean was acting on behalf of New Hirten, not HMH. *See* Second Dean Decl. ¶ 23; Ruppert Decl. ¶ 2; *see also* M & O Re

Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶¶ 42–43 admitted). Gerffert's contention that the license was somehow granted to HMH when the two individuals involved in the transaction state that the intended recipient was New Hirten is unpersuasive.

Gerffert also asserts, without any factual basis, that there is no evidence that Dean was acting as a promoter for Hirten LLC. *See* Plaintiff's Response at 10–12. "A corporate promoter is one who, alone or with others, participates in the formation of a corporation or some other joint business venture, and takes steps to put it in a position to transact the business for which it is intended." *Café La France, Inc. v. Schneider Sec., Inc.,* 281 F.Supp.2d 361, 373 (D.R.I.2003). Here Defendants have submitted uncontradicted evidence that Dean acted as a promoter for Hirten LLC in his commissioning of Ruppert to create the Modified Works. *See* M & O Re Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶¶ 42–44 admitted).

Gerffert argues that whether an individual is a promoter is a question of fact, and, therefore, not ripe for a summary judgment motion. *See* Plaintiff's Response at 11. However, Gerffert has failed to properly dispute the facts which establish that Dean was acting as promoter. *See* M & O Re Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶¶ 42–44 admitted); *see also Rees v. Mosaic Techs., Inc.,* 742 F.2d 765, 768–69 (3rd Cir.1984) (explaining that when pre-incorporation activities of a promoter are ratified by the post-incorporation acts of the corporation, the act of ratification relates back in time to the original activities "permitting the acts of the promoter to constitute, in effect, acts done by the corporation"). Gerffert has also failed to tender any admissible evidence to show that Dean was not acting as a promoter for Hirten LLC when he approached Ruppert in the summer of 2007. *See* Memorandum and Order Striking in Part Plaintiff's Statement of Undisputed Facts and Denying Request to Substitute (Dkt. # 54) ("M & O Striking Plaintiff's SUF") at 6; *see also* Local Rule 56(a)(5) Statement of Disputed Facts of William J. Hirten Co. LLC and James Dean (Dkt. # 35) ("Defendants' SDF") at 2.

 Evidence from the moving party as to specific facts can be accepted by the court where no contrary evidence is tendered by the party opposing summary judgment. *Statchen v. Palmer,* 623 F.3d 15, 18 (1st Cir.2010). That is the case here with respect to the issue of whether Dean was acting as a promoter for Hirten LLC. A genuine issue of material fact "does not spring into being merely because a litigant claims that one exists." *United States v. 6 Fox Street,* 480 F.3d 38, 42 (1st Cir.2007)(quoting *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990)). "[T]he nonmoving party must produce 'hard evidence of a material factual dispute' to survive a summary judgment motion," *id.* (internal citation omitted), and a dispute about a material fact is genuine only if a reasonable jury could resolve it in favor of either party, *Lockridge v. Univ. of Maine Sys.,* 597 F.3d 464, 469 n. 3 (1st Cir.2010). A reasonable jury would be unable to find that Dean was not acting as a promoter when he commissioned Ruppert to produce the Modified Works. Thus, the Court rejects Gerffert's arguments that the license does not belong to Hirten LLC.

### 3. Statute of Frauds

Gerffert makes an unclear argument that the agreement which Dean and Ruppert made in the summer of 2007 could not be performed in one year because "Dean has affirmed in his declaration that 'It typically takes approximately a year and a half to develop a new communion book.' "

Plaintiff's Response at 13 (quoting Third Dean Decl. ¶ 26). Based on this premise, Gerffert asserts that the license could not be performed within one year and is unenforceable because it was not in writing. *See id.*

Defendants respond that this argument makes no sense. *See* Reply of William J. Hirten Company, LLC and James Dean in Support of Their Motion for Summary Judgment (Dkt. # 42) ("Defendants' Reply") at 6. They note that "[t]he contract [agreed to between Dean and Ruppert] was performed within two months." *Id.* The Court agrees with Defendants. *See* M & O Re Defendants' SUF at 11, 12 (deeming Defendants' Corr. SUF ¶¶ 22, 41–44 admitted). It appears that Gerffert is conflating or confusing how long it took Ruppert to produce the Modified Works with how long it took to put those Modified Works in a new communion book. In any case, the Court finds Gerffert's statute of frauds argument unpersuasive.

### 4. Breach of Fiduciary Duty

Gerffert additionally argues that because Dean was an employee of Gerffert in July 2007 "any actions that Dean took . . . as far as commissioning Mr. Ruppert to create the [Modified Works] were a breach of his fiduciary duty, and he cannot be permitted to acquire any benefit from those actions." Plaintiff's Response at 9. However, Panigel had told Dean in late [6] May 2007 that he was retiring. M & O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 31 admitted to this extent). Panigel now claims that this was only a negotiation tactic, *see* Panigel Reply Decl. ¶ 30, and suggests that Dean knew (or should have known) that he "did not intend to retire . . .," *id.* at 15 n. 11. How-

ever, the Court is unpersuaded by the evidence which Gerffert cites that Dean knew during the summer of 2007 that Panigel did not intend to retire. *See* Email from Kaufman to Martin, M.J., of 8/30/10 (providing record citations which the Court had requested). Indeed, Panigel himself states that as late as mid-November 2007 he "was still negotiating with Fratelli Bonella to buy Gerffert," Panigel Reply Decl. ¶ 35, and that he "expected the purchase of Gerffert to occur in the near future," *id.* Such negotiation and expectation are consistent with the intention expressed his May 2007 retirement email to either sell Gerffert or liquidate it, see Retirement Email at 2. They are inconsistent with Panigel's claim that "everything," Panigel Reply Decl. at 15 n. 11, he said and did indicated that he did not intend to retire, at least to the extent he contends that such indication was clear prior to mid-November 2007.

Moreover, from February 2005 through at least mid-November 2007, it was the intention of Gerffert (and its president Panigel) to either purchase ownership of Hirten New York or later sell the assets of Gerffert or significant merchandise which Gerffert had accumulated for the Hirten New York line. *See* M & O Re Defendants' SUF at 10–12 (deeming Defendants' Corr. SUF ¶¶ 7–9, 12, 14, 17, 20, 23–26, 29, 31, 34–39 admitted); Panigel Reply Decl. ¶ 35. As of May 2007, Panigel knew that Dean would be an owner in the soon to be formed Hirten LLC and he continued to employ Dean, *see* M & O Re Defendants' SUF at 11, 12 (deeming Defendants' Corr. SUF ¶¶ 29, 36, 39 admitted), who had been "hired primarily to work in developing the Hirten line," Retirement Email at 1. Pani-

---

**6.** The email in which Panigel announced his decision to retire is dated May 25, 2007, and Panigel told Dean that he was retiring after sending it. *See* Reply Declaration of Stephen Panigel in Further Support of Motion for Preliminary Injunction and in Opposition to Cross–Motion for Summary Judgment (Dkt. # 30–1) ("Panigel Reply Decl.") at 30 n. 22.

gel also knew that Dean was marketing and developing products on behalf of Hirten LLC and that the success of Hirten LLC would assist Gerffert in recouping its substantial investment in Hirten New York. *See* M & O Re Defendants' SUF at 11, 12 (deeming Defendants' Corr. SUF ¶¶ 29, 36, 39 admitted); *see also* Panigel Reply Decl. ¶ 21 (referring to "all the money that had been spent to build the second floor onto Gerffert's building and to improve Hirten New York's line"); *id.* ¶ 24 (noting investment of "close to $5 million dollars in the enterprise"); *id.* ¶ 46 ("I did not want to do anything to impede the possible sale of Gerffert to Fratelli Bonella . . . ."); *id.* ¶ 61 ("I clearly did not want to harm [Dean and Tally] or Hirten, or antagonize the Bonellas, because I still had hopes that Fratelli Bonella would buy Gerffert."); *id.* ¶ 66 ("I knew that Tally and Dean were attending to Hirten's move, and since I still had hopes that Gerffert would be purchased by Fratelli Bonella, I did not prevent it.").

▮▮▮ Thus, Dean's actions in developing and marketing products for Hirten LLC in the summer of 2007 were not inconsistent with his fiduciary obligations to Gerffert because such actions were consistent with maximizing Gerffert's return on its investment. Gerffert has failed to come forward with any competent evidence to establish a trial-worthy issue regarding an alleged breach of fiduciary duty which would require the imposition of a constructive trust. *See Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993) (stating summary judgment standard);

*Forasté v. Brown Univ.,* 248 F.Supp.2d 71, 79 (D.R.I.2003)(same). Accordingly, Gerffert's argument that Dean breached a fiduciary duty and that a constructive trust should be imposed is rejected.

### 5. Terminability of License

Gerffert argues if any license was granted to Defendants for use of the Modified Works, it is terminable at will because it had no term length, and Gerffert has now terminated that license. *See* Plaintiff's Response at 13–15. In making this argument, Gerffert appears to dispute the principle that a nonexclusive license supported by consideration is irrevocable. *See id.* at 13. The Court, however, finds that the principle is well established in the law. *See Lulirama Ltd., Inc. v. Axcess Broadcast Servs., Inc.,* 128 F.3d 872, 882–83 (5th Cir.1997) (rejecting plaintiff's argument that it had the ability to terminate a nonexclusive license); *see also Asset Mktg. Sys., Inc. v. Gagnon,* 542 F.3d 748, 757 (9th Cir.2008)(holding that "because [plaintiff] paid consideration, this [non-exclusive] license is irrevocable")(citing *Lulirama;* 3–10 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.02[B][5] (2008)).

Gerffert cites several Rhode Island cases in support of its contention that it could terminate the license granted to Defendants, but these cases deal with employment contracts, not licenses.[7] *See* Plaintiffs' Response at 14–15 (citing, *inter alia, Hilton v. Fraioli,* 763 A.2d 599, 602 (R.I.2000); *Sch. Comm. of Providence v. Bd. of Regents for Educ.,* 112 R.I. 288, 308

---

7. Gerffert appears to assume that Rhode Island law governs the agreement between New Hirten and Ruppert regarding the Modified Works. *See* Plaintiffs' Response at 14 ("Since there is no termination date in the alleged license, we look to Rhode Island law."). "Ordinarily, unless a contract provides otherwise, it is governed by the law of the state in which

it was formed." *Latin Am. Music Co. v. Am. Soc'y of Composers Authors & Publishers,* 593 F.3d 95, 99 (1st Cir.2010). It is not clear from the present record that the contract at issue was formed in Rhode Island, but for purposes of considering this argument the Court accepts Gerffert's assumption.

A.2d 788, 790 (1973)). Thus, they are inapposite. This Court agrees with the Fifth and Ninth Circuits that if the license were terminable, as Gerffert contends, the contractual agreement between Hirten LLC and Ruppert would have been illusory. As the Fifth Circuit explained in *Lulirama:*

> If Lulirama had the ability to terminate the license at will, then no contract could exist because Lulirama's obligation under the contract would be illusory. *See* Restatement (Second) of Contracts § 2 cmt. e (1981)("Words of promise which by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise. Although such words are often referred to as forming an illusory promise, they do not fall within the present definition of promise."); *Light v. Centel Cellular Co.,* 883 S.W.2d 642, 645 (Tex.1994)("When illusory promises are all that support a purported bilateral contract, there is no contract."). A presumption exists that parties to a purported contract did not intend to make illusory promises. *See Holguin v. Twin Cities Servs., Inc.,* 750 S.W.2d 817, 819 (Tex.App.-El Paso 1988, no writ)("[I]t is presumed that when parties make an agreement they intend it to be effectual, not nugatory; and the contract will be construed in favor of mutuality....").

*Lulirama Ltd., Inc.,* 128 F.3d at 882–83 (alterations in original).

The record in this case provides no indication that Hirten LLC and Ruppert intended that Hirten LLC's right to use the Modified Works was terminable by Ruppert. Based on this and the law from the Fifth and Ninth Circuits discussed above, I find that the non-exclusive license was not terminable. Although Gerffert subsequently acquired all of Ruppert's rights in the Modified Works, because Ruppert did not have a right to terminate the license Gerffert similarly lacks such right. Accordingly, the Court rejects Gerffert's argument that it has terminated the license.

**B. Breach of Fiduciary Duty Claim** [8]

Gerffert's arguments in support of its breach of fiduciary duty claim against Dean, *see* Plaintiff's Response at 16–17, suffer from the same defects which caused the Court to reject similar arguments made with respect to the copyright infringement claim, *see* Discussion section III. A. 4. *supra* at 21–24. Gerffert asserts that Dean "misrepresent[ed] to Mr. Ruppert that he was, or would be soon, Plaintiff's new owner and commissioned Mr. Ruppert to create the [Modified Works] to use for his own benefit." [9] Plaintiff's Response at 16. However, there is no admissible evidence to support this assertion, and it is directly contradicted by the declarations of Dean and Ruppert. Gerffert claims that Dean knew that Panigel was not retiring when Dean approached Ruppert, but the Court has already rejected this claim. *See* Discussion section III. A. 4. *supra* at 22–23. In short, Gerffert has failed to come forward with any admissible evidence which supports its breach of fiduciary duty claim. [10] Accordingly, Defendants are entitled to summary judgment on this claim also.

**8.** This claim is contained in Count 5 of the Amended Complaint. See Amended Complaint ¶¶ 75–83.

**9.** Gerffert claims, without providing a supporting citation, that "Defendants do not dispute," Plaintiff's Response at 16, that Dean made the alleged misrepresentation, *see id.*

Gerffert's claim is completely baseless, and it is rejected by the Court.

**10.** Gerffert also alleges in its Amended Complaint that Dean interfered "*with negotiations* between Plaintiff and Defendant Hirten's predecessor company and its officers," Amended Complaint ¶ 80, but it has offered no evidence

## IV. Summary

In sum, Gerffert has failed to meet its burden of presenting competent evidence to defeat the instant Motion for Summary Judgment. The record supports Defendants' contention that Ruppert granted Hirten LLC a nonexclusive license to use the Modified Works in a communion book. Gerffert's arguments for rescission or imposition of a constructive trust based on fraud lack evidentiary support. Similarly, its argument that any license would not be to Hirten LLC ignores the declarations of Dean and Ruppert, the two individuals directly involved in the transaction. Because Hirten LLC paid consideration for the license, it is not subject to termination by Gerffert. Lastly, Dean did not breach any fiduciary duty to Gerffert after Panigel told Dean that he was retiring and was going to sell or liquidate the business.

## V. Conclusion

For the reasons stated above, I recommend that Defendants' Motion for Summary Judgment be granted. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. *See* Fed.R.Civ.P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. *See United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980).

to support this allegation. Accordingly, this allegation does not prevent the granting of the